**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AIDAN FORSYTH,<br><br>Plaintiff-Relator,<br><br>v.<br><br>HARBOR HOUSE SEAFOOD, INC., HARBOR HOUSE SEAFOOD, LLC, and MARK HAROLD BRYAN,<br><br>Defendants. | **Civil Action No. 22-06543 (ESK) (SAK)**<br><br>**Hon. Edward S. Kiel, U.S.D.J.**<br>**Hon. Sharon A. King, U.S.M.J.**<br><br>**FIRST AMENDED QUI TAM COMPLAINT**<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
CLERK
2026 MAR -5 P 1:50

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this First Amended Complaint in his *qui tam* action against Defendants Harbor House Seafood, Inc. ("HHSI"), Harbor House Seafood, LLC ("HHSLLC") (together, the Corporate Defendants"), and Mark Harold Bryan ("Bryan") (together, "Defendants"), and alleges as follows:

## INTRODUCTION

1. This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP") and COVID-19 Economic Injury Disaster Loan ("EIDL") and grant program, in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2. Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that

Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP and EIDL loan and grant programs.

## SUMMARY OF ALLEGATIONS

3. Defendant Bryan is the owner and principal of Defendants HHSI and HHSLLC.

4. Upon information and belief, Defendant Bryan has a 20% or greater equity interest in HHSI and HHSLLC.

5. HHSI is a seafood wholesaler and retailer based in Seaford, Delaware.

6. HHSLLC is a seafood processing business based in Port Norris, New Jersey.

7. In or about 2015, Bryan was convicted of federal felonies involving fraud in this District and was sentenced to 26 months' imprisonment, to be followed by three years' supervised release.

8. On or about May 25, 2017, Bryan was released from prison and was placed on supervised release, which is a form of parole or probation.[1]

9. In or about 2020 and 2021, HHSI submitted Small Business Administration ("SBA") applications for PPP loans and EIDL loans and grants.

10. In or about 2020, HHSLLC submitted an SBA application for a PPP loan.

11. In or about 2021, HHSI and HHSLLC sought and obtained forgiveness of the PPP loans.

[1] It is well established that supervised release, which replaced parole in Federal sentencing pursuant to the Sentencing Reform Act of 1984, is a form of parole or probation. *See, e.g., Johnson v. United States*, 529 U.S. 694, 696-97 (2000) ("Congress eliminated most forms of parole in favor of supervised release, a form of postconfinement monitoring overseen by the sentencing court, rather than the Parole Commission."), *accord United States v. Perez*, 86 CR 430 (VLB), 1995 U.S. Dist. LEXIS 1541, at *2 (S.D.N.Y. Feb. 7, 1995) ("Various forms of supervised release including parole and probation serve the same basic objectives and may be treated as equivalent for some purposes.") and *United States v. Kissinger*, 309 F.3d 179, 181 (3d Cir. 2002) (discussing similarities among parole, probation and supervised release). The standard federal criminal judgment, which the Court used in Bryan's case, orders that "[u]pon release from imprisonment, the defendant shall be placed on supervised release." Plainly the "placement" occurs after (or upon) release, not at the time of sentencing.

12. Bryan prepared or caused to be prepared the loan and grant applications as HHSI's and HHSLLC's authorized representative.

13. In the applications, Defendants falsely stated and certified that no owner of the borrower with an equity interest of more than 20 percent had within the last five years been placed on any form of parole or probation for a felony and/or a felony involving fraud. FN? They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

14. In reliance on these materially false statements and certifications, one or more lenders extended PPP and EIDL loans to HHSI and HHSLLC totaling over $1.7 million, and $20,000.00 in EIDL grants.

15. In further reliance on Defendants' false statements and certifications, the lenders forgave the PPP loans, the reimbursement for which cost the United States approximately $1.5 million.

16. Neither Bryan nor anyone else employed by or affiliated with the Corporate Defendants ever consulted an accountant, attorney or other professional to get advice concerning their eligibility for PPP loans or EIDL grants and loans prior to the Corporate Defendants submitting their loan, grant and loan-forgiveness applications.

17. Relator filed this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed, granted and forgiven monies that were provided to Defendants and/or reimbursed to the lender as the result of their wrongdoing, as well as to recover treble damages and/or penalties.

**JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS**

18. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

19. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants transact business in this District, and because the PPP Loan application was prepared in, executed in, and/or submitted to the SBA from this District.

20. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

21. In accordance with 31 U.S.C. § 3730(b)(2), the original Complaint was filed *in camera*, has remained under seal by order of this Court, and will not be served on the Defendants until the Court so orders.

22. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator previously complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable Philip R. Sellinger, former United States Attorney for the District of New Jersey, and upon the Honorable Merrick B. Garland, former Attorney General of the United States.

23. Relator is not aware that the allegations in this Complaint have been publicly disclosed. Further, to the extent Relator is aware of any public disclosures, this Complaint is not based on such public disclosures. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES

24. Plaintiff/Relator Aidan Forsyth resides in New York, NY.

25. Defendant Harbor House Seafood, Inc. is a privately-held company incorporated in the State of Delaware on or about February 27, 1987. Its principal place of business is located at 504 Bridgeville Road, Seaford, DE 19973. HHSI is a seafood wholesaler and retailer.

26. Defendant Harbor House Seafood, LLC is a privately-held limited liability company formed in the State of New Jersey on or about March 28, 2008. Its principal place of business is located at 2601 Ogden Avenue, Port Norris, NJ 08349.

27. Defendant Mark Harold Bryan resides at 3626 Warwick Road, East New Market, MD 21631. He has and/or at all times relevant to this action had, at least a 20% equity ownership interest in HHSI and HHSLLC.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

28. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

29. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $14,308.00 and up to $28,619.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(G), 20 CFR Part 356 and 28 CFR Part 85 (*see* 90 FR 29445, 29446, July 3, 2025).

30. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

31. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any

portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

32. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

33. In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

34. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

35. Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress

authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

36. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

37. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

38. The borrower's authorized representative must certify, among other things, the business's average monthly payroll expenses and number of employees. This information is used to calculate the amount of money the business is eligible to be loaned. The applicant must also submit documentation showing payroll expenses, among other things.

39. In the original version of the PPP loan application (SBA Form 2483, effective April 2, 2020), Question 5 required the authorized representative to check "Yes" or "No" to the question:

> Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?

and to "Initial here to confirm your response to question 5" → ________

40. Question 6 in the same application form required the authorized representative to check "Yes" or "No" to the question:

> Within the last 5 years, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?

and to "Initial here to confirm your response to question 6" → ________

41. In the first revised version of the PPP loan application (effective June 12, 2020), and in all additional revisions thereafter, Question 6 required the authorized representative to certify that no owner of the applicant had been convicted of any felony within the last year, or of "any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance" or "been placed on any form of parole or probation" as the result of such conviction within the last five years.

42. All versions of the application prominently stated that if Questions 5 or 6 were answered "Yes," the loan would not be approved.

43. All versions of the application further required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

44. PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

45. Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application.

46. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA along with a Lender Application Form – Paycheck Protection Program Loan Guaranty (SBA Form 2484) ("Guaranty Application").

47. Among other things, the Guaranty Application required the lender to check "Yes or "No" to the following statement:

> The Applicant has represented to the Lender that neither the Applicant (if an individual) nor any individual owning 20% or more of the equity of the Applicant has within the last 5 years, for any felony, 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment.

This statement appeared in Section H of Form 2484, which was entitled "**Character Determination** *(If no, the loan cannot be approved)*" (bold and italics in original).

48. Once the SBA approved the Loan Guaranty, it issued the lender a loan number and after receiving that number the lender funded the PPP loan using its own monies, which loan was 100% guaranteed by the Federal Government.

49. Borrowers were to use loan proceeds for

- Payroll costs, including benefits;
- Interest on mortgage obligations, incurred before February 15, 2020;
- Rent, under lease agreements in force before February 15, 2020; and
- Utilities, for which service began before February 15, 2020.

Paycheck Protection Program Information Sheet: Borrowers (published April 3, 2020).

50. The SBA allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and used at least 60% of the proceeds for payroll expenses.

51. The PPP Loan Forgiveness Application Form required the applicant's authorized representative to certify that the borrower had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of the forgiveness application. Among other things, the representative was required to certify that:

> The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):
>
> - was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures)[.]

52. The forgiveness application also required the representative to certify that all information provided was "true and correct in all material respects" and to acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

53. The EIDL program was an SBA program that provided low-interest financing to eligible small businesses, renters and homeowners in areas affected by declared disasters.

54. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the pandemic. Businesses could also apply for and receive an emergency EIDL grant of up to $10,000.00, which served as an advance on any EIDL.

55. To obtain an EIDL, a qualifying business was required to submit an application to the SBA through an online portal, providing information about its operations such as the number of employees, gross revenues and cost of goods sold in the 12-month period preceding the disaster. That information was used to determine the amount of the EIDL.

56. More broadly than the PPP Loan application, the EIDL application (SBA Form 3501) required the applicant to attest whether, with regard to any felony, any owner of the applicant (again, defined as a person holding a 20% or greater share of equity) had been convicted, pled guilty, pled nolo contendere, or been placed on any form of parole, probation, or pretrial diversion within the last five years. The application likewise required the applicant to certify that the information provided was true and accurate, and to acknowledge the civil liability and/or administrative, civil, and criminal penalties attendant to making a false statement.

57. The loan processor communicated with the applicant via email, and decisions on loan applications were emailed to the applicant. If a loan was approved, the applicant or its authorized representative digitally signed the loan document, and copies of the loan document were emailed to the applicant or made available on the portal. The SBA directly issued any EIDL proceeds to the applicant.

58. As with the PPP loans, EIDL proceeds could only be used for certain purposes, such as payroll (including sick leave), production costs, and business obligations such as debts, rent and mortgage payments. If a business also obtained a PPP loan, it could not use the PPP loan and EIDL proceeds for the same purposes.

## SPECIFIC FRAUD ALLEGATIONS

### Mark Harold Bryan is Convicted of a Felony Involving Fraud, and Sentenced to Prison to be Followed by a Term of Supervised Release

59. In or about 2015, Bryan and several individual and corporate codefendants (including HHSI) were convicted of federal felonies involving fraud in this District.[2] He was sentenced to 26 months' imprisonment, to be followed by a three-year term of supervised

[2] Bryan was convicted under the Lacey Act, which makes illegal making a false record or account or falsifying a record with intend to impeded prop[er administration of an FDA matter. Jury had to conclude records were knowingly false. Designed to combat seafood fraud. Alfa Intl Seafood v Ross, 264 F. Supp. 3d 23 DDC 2017)

release. See Judgment in a Criminal Case, *United States v. Bryan*, No. 11-CR-520-006 (RMB) (D.N.J. Mar. 2, 2015) (Doc. 354).

60. On or about May 25, 2017, Bryan was released from prison and, pursuant to the Judgment, was placed on supervised release, which is a form of parole or probation.

61. On or about October 10, 2018, Bryan moved for early termination of supervised release. In his sworn Certification in Support, Bryan described the application as "my Motion for early termination of *probation*." *Id.* Doc. 451-3 (emphasis added).

62. On or about December 18, 2018, the District Court granted Bryan's motion for early termination of his term of supervised release. *See id.*, Order (Doc. 453).

**HHSI Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven**

63. In or about late March or early April 2020, Bryan directed an HHSI employee to prepare an SBA application for a PPP loan (using the original SBA Form 2483 effective April 2, 2020) on behalf of HHSI to 1880 Bank, a federally-insured financial institution headquartered in Cambridge, Maryland.[3]

64. Stebbins prepared the loan application, checking "No" in response to Questions 5 and 6. Bryan initialed Questions 5 and 6, and he and Stebbins executed HHSI's PPP loan application as the company's Owner and Authorized Representative respectively.

65. Bryan falsely and fraudulently caused Question 6 to be answered "No" in the loan application, and initialed Question 6 to confirm this materially false response.

66. Bryan caused the employee to falsely and fraudulently certify that "the information provided in this application and the information provided in all supporting

[3] In or about October 2020, the parent company of 1880 Bank was acquired by the parent company of BayVanguard Bank, which was based in Baltimore, Maryland, and began operating under the name BayVanguard Bank. *See 1880 Bank Becomes BayVanguard Bank*, Dorchester Star (Mar. 7, 2021).

documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

67. On or about April 1, 2020, Bryan submitted or caused to be submitted HHSI's PPP loan application to 1880 Bank.

68. On or about April 3, 2020, in reliance on Bryan's and HHSI's materially false and fraudulent representations and certifications in the loan application, 1880 Bank submitted a Guaranty Application to the SBA. In Section H, the lender checked "Yes" to the statement affirming that

> The Applicant has represented to the Lender that neither the Applicant (if an individual) nor any individual owning 20% or more of the equity of the Applicant has within the last 5 years, for any felony, 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)

Trevor Carouge, Senior Vice President of 1880 Bank, was listed on the Guaranty Application as Lender Contact.

69. On or about April 5, 2020, in reliance on Bryan's and HHSI's materially false and fraudulent representations and certifications in the loan application, 1880 Bank issued PPP Loan #5279117002 to HHSI in the amount of $580,100.00 (the "7002 Loan"). The Government paid 1880 Bank a loan processing fee in the approximate amount of $17,000.00.

70. On or about April 9, 2020, the loan proceeds were deposited into HHSI's operating bank account, an 1880 Bank checking account (the "HHS Operating Account").

71. Upon information and belief, shortly after the 7002 Loan was issued, significant amounts of money were disbursed from the HHS Operating Account to pay for corporate debts of HHSI affiliates.

72. In or about early May 2021, Bryan directed an HHSI employee to prepare an SBA application for forgiveness of the 7002 Loan.

73. The PPP Loan Forgiveness Application Form required the applicants' authorized representatives to certify that the borrower had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of the forgiveness application. The application also required the representative to certify that all information provided was "true and correct in all material respects" and to acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

74. HHSI's authorized representative falsely and fraudulently certified that the business had all complied with the SBA's first-draw PPP loan requirements and was therefore entitled to loan forgiveness.

75. Among other things, the application contained a false and fraudulent certification that the entirety of the loan proceeds had been spent on payroll.

76. On or about May 6, 2021, Bryan submitted or caused to be submitted HHSI's loan forgiveness application to BayVanguard Bank.

77. On or about May 13, 2021, in reliance on the materially false and fraudulent certifications in HHSI's application, the 7002 Loan was forgiven in full, causing the United States to reimburse BayVanguard Bank for the full amount plus interest, costs and fees.

**HHSI Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven**

78. In or about January 2021, Bryan prepared or caused to be prepared an SBA application for a second-draw PPP loan (using SBA Form 2483-SD effective January 2021 or later) on behalf of HHSI to BayVanguard Bank.

79. Question 6 required the authorized representative to certify that no owner of the applicant (defined as a person having more than a 20% equity interest in the entity) had been convicted of a felony "involving fraud" or "been placed on any form of parole or probation" as the result of such conviction within the last five years. The application stated that if this question were answered "Yes," the loan would not be approved.

80. The application required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

81. Upon information and belief, Bryan executed HHSI's PPP loan application as the company's authorized representative, or directed and/or caused another person to do so.

82. Upon information and belief, Bryan falsely answered or caused to be answered "No" to Question 6 in the loan application, and initialed or caused to be initialed Question 6 to confirm this false response.

83. Upon information and belief, Bryan falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

84. In or about January 2021, Bryan submitted or caused to be submitted HHSI's second-draw PPP loan application to BayVanguard Bank.

85. Upon information and belief, shortly after BayVanguard Bank received the loan application, in reliance on Bryan's and HHSI's materially false and fraudulent representations and certifications in the application, BayVanguard Bank submitted a Guaranty Application to the SBA. In Section H, the lender checked "Yes" to the statement affirming that

> The Applicant has represented to the Lender that neither the Applicant (if an individual) nor any individual owning 20% or more of the equity of the Applicant has within the last 5 years, for any felony, 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)

86. On or about January 17, 2021, in reliance on Bryan's and HHSI's materially false and fraudulent representations and certifications in the loan application, BayVanguard Bank issued PPP Loan #1492988307 to HHSI in the amount of $670,020.00 (the "8307 Loan"). The Government paid BayVanguard Bank a loan processing fee in the approximate amount of $20,000.00.

87. In or about early May 2021, Bryan directed an HHSI employee to prepare an SBA application for forgiveness of the 7002 Loan.

88. The PPP Loan Forgiveness Application Form required the applicants' authorized representatives to certify that the borrower had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of the forgiveness application. The application also required the representative to certify that all information provided was "true and correct in all material respects" and to acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

89. HHSI's authorized representative falsely and fraudulently certified that the business had all complied with the SBA's first-draw PPP loan requirements and was therefore entitled to loan forgiveness.

90. Among other things, the application contained a false and fraudulent certification that the entirety of the loan proceeds had been spent on payroll.

91. On or about May 6, 2021, Bryan submitted or caused to be submitted HHSI's loan forgiveness application to BayVanguard Bank.

92. On or about June 24, 2021, the 8307 Loan was forgiven in full, causing the United States to reimburse BayVanguard Bank for the full amount plus interest, costs and fees.

**HHSI Applies for and Receives an EIDL Grant and Loan**

93. In or about April 2020, Bryan prepared or caused to be prepared an SBA application for an EIDL loan (using SBA Form 3501) on behalf of HHSI.

94. Question 16(b) asked the authorized representative whether, with regard to a felony, no owner of the applicant (defined as a person having more than a 20% equity interest in the entity) had been convicted, pled guilty, pled nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgment) within the last five years. If the answer was "yes," the form required the authorized representative to indicate the name of the convicted individual.

95. The application required the applicant's representative to "certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future[]" and warned the applicant that wrongful application of loan proceeds and any false statement or representation to the SBA could result in civil liability, administrative sanctions and/or criminal penalties.

96. Upon information and belief, Bryan executed or caused to be executed HHSI's EIDL loan application as the company's authorized representative, or directed and/or caused another person to do so.

97. Upon information and belief, Bryan falsely answered or caused to be answered "No" to Question 16(b) in the loan application.

98. Upon information and belief, Bryan signed the loan application and thus falsely certified or caused to be certified that "all information in [the] application and submitted with [the] application is true and correct to the best of [their] knowledge" while acknowledging that that any false statement or representation to the SBA could result in civil liability, administrative sanctions and/or criminal penalties.

99. In or about April 2020, Bryan submitted or caused to be submitted HHSI's EIDL loan application the SBA.

100. On or about April 24, 2020, in reliance on Bryan's and HHSI's materially false and fraudulent representations and certifications in the loan application, the SBA issued Grant #3301458494 to HHSI in the amount of $10,000.00.

101. On or about May 30, 2020, in reliance on Bryan's and HHSI's materially false and fraudulent representations and certifications in the loan application, the SBA issued EIDL loan #5496137810 to HHSI in the amount of $150,000.00.

**<u>HHSLLC Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven</u>**

102. In or about late March or early April 2020, Bryan directed an HHSLLC employee to prepare an SBA application for a PPP loan (using the original SBA Form 2483 effective April 2, 2020) on behalf of HHSLLC to 1880 Bank.

103. The employee prepared the loan application, checking "No" in response to Questions 5 and 6. Bryan initialed Questions 5 and 6, and he and the employee executed HHSLLC's PPP loan application as the company's Owner and Authorized Representative respectively.

104. Bryan falsely and fraudulently caused Question 6 to be answered "No" in the loan application, and initialed Question 6 to confirm this materially false response.

105. Bryan caused the employee to falsely and fraudulently certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

106. On or about April 3, 2020, Bryan submitted or caused to be submitted HHSI's PPP loan application to 1880 Bank.

107. On or about April 6, 2020, in reliance on Bryan's and HHSI's materially false and fraudulent representations and certifications in the loan application, 1880 Bank submitted a Guaranty Application to the SBA. In Section H, the lender checked "Yes" to the statement affirming that

> The Applicant has represented to the Lender that neither the Applicant (if an individual) nor any individual owning 20% or more of the equity of the Applicant has within the last 5 years, for any felony, 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)

Kim C. Liddell, President/CEO of 1880 Bank, executed the Guaranty Application.

108. On or about April 9, 2020, in reliance on Bryan's and HHSLLC's materially false and fraudulent representations and certifications in the loan application, 1880 Bank issued PPP

Loan #7843187002 to HHSLLC in the amount of $172,582.00 (the "7002 Loan"). The Government paid 1880 Bank a loan processing fee in the approximate amount of $8,600.00.

109. The proceeds of the 7002 Loan were deposited into the HHS Operating Account.

110. As previously alleged, in the following days several payments were made out of the HHS Operating Account to pay down corporate debt for affiliated entities.

111. In or about early May 2021, Bryan directed an HHSLLC employee to prepare an SBA application for forgiveness of HHSLLC's PPP loan.

112. The PPP Loan Forgiveness Application Form required the applicants' authorized representatives to certify that the borrower had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of the forgiveness application. The application also required the representative to certify that all information provided was "true and correct in all material respects" and to acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

113. HHSLLC's authorized representative falsely and fraudulently certified that the business had all complied with the SBA's first-draw PPP loan requirements and was therefore entitled to loan forgiveness.

114. Among other things, the application contained a false and fraudulent certification that the entirety of the loan proceeds had been spent on payroll.

115. On or about May 13, 2021, in reliance on the materially false and fraudulent certifications in HHSLLC's application, the 7002 Loan was forgiven in full, causing the United States to reimburse BayVanguard Bank for the full amount plus interest, costs and fees.

**HHSLLC Applies for and Receives an EIDL Grant and Loan**

116. In or about July 2020, Bryan prepared or caused to be prepared an SBA application for an EIDL loan (using SBA Form 3501) on behalf of HHSLLC.

117. Question 16(b) asked the authorized representative whether, with regard to a felony, no owner of the applicant (defined as a person having more than a 20% equity interest in the entity) had been convicted, pled guilty, pled nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgment) within the last five years. If the answer was "yes," the form required the authorized representative to indicate the name of the convicted individual.

118. The application required the applicant's representative to "certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future[]" and warned the applicant that wrongful application of loan proceeds and any false statement or representation to the SBA could result in civil liability, administrative sanctions and/or criminal penalties.

119. Upon information and belief, Bryan executed or caused to be executed HHSLLC's EIDL loan application as the company's authorized representative, or directed and/or caused another person to do so.

120. Upon information and belief, Bryan falsely answered or caused to be answered "No" to Question 16(b) in the loan application.

121. Upon information and belief, Bryan signed the loan application and thus falsely certified or caused to be certified that "all information in [the] application and submitted with [the] application is true and correct to the best of [their] knowledge" while acknowledging that

that any false statement or representation to the SBA could result in civil liability, administrative sanctions and/or criminal penalties.

122. In or about July 2020, Bryan submitted or caused to be submitted HHSLLC's EIDL loan application the SBA.

123. On or about July 13, 2020, in reliance on Bryan's and HHSLLC's materially false and fraudulent representations and certifications in the loan application, the SBA issued Grant #3304351895 to HHSLLC in the amount of $10,000.00.

124. On or about July 17, 2020, in reliance on Bryan's and HHSLLC's materially false and fraudulent representations and certifications in the loan application, the SBA issued EIDL loan #4747748105 to HHSLLC in the amount of $150,000.00

**THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT**

125. Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $1.5 million.

**CLAIMS FOR RELIEF**

**COUNT I**

False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
31 U.S.C. § 3729(a)(1)(A)

126. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

127. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II

False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)

128. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

129. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – i.e., the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III

Unjust Enrichment

130. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

131. Defendants knowingly accepted payments from the Government, including but not limited to forgiveness of their PPP loans, that they were not legally entitled to receive.

132. Defendants were unjustly enriched at the expense of the United States.

133. All payments to Defendants alleged herein are void and must be disgorged to the United States.

**DEMANDS FOR RELIEF**

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A. That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B. That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $14,308.00 and up to $28,619.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(G), 20 CFR Part 356 and 28 CFR Part 85 (*see* 90 FR 29445, 29446, July 3, 2025), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C. That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D. That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E. That Relator be granted such other and further relief as the Court deems just and proper.

**TRIAL BY JURY**

Relator hereby demands a trial by jury as to all issues.

DATE: March 5, 2026

**SPIRO HARRISON & NELSON**

Eric H. Jaso
363 Bloomfield Avenue
Second Floor
(973) 232-0881
ejaso@spiroharrison.com

*Attorneys for Relator*